CATHARINE L. WINTERGIRST, Respondent, v. COLLATERAL LOAN COMPANY, Appellant.

St. Louis Court of Appeals, January 2, 1895.

Chattel Mortgages: SUFFICIENCY OF EVIDENCE TO ESTABLISH THE RESERVATION OF USURIOUS INTEREST. The evidence in this cause is considered, and *held* sufficient to establish the reservation of usurious interest on a loan secured by chattel mortgage under the cover of outlays for services, and the consequent invalidity of the mortgage under the act of April 21, 1891.

· *Appeal from the St. Louis City Circuit Court.*—Hon.
Daniel D. Fisher, Judge.

Affirmed.

*Jas. R. Kinealy* for appellant.

*John J. O'Connor* for respondent.

Bond, J.—This is an action · of replevin, begun
before a justice, to recover possession of household
furniture. Plaintiff had judgment before the justice,
and again on appeal in the circuit court.

On the trial there was evidence tending to show
that plaintiff owned the property described in the peti-
tion; that she applied to one John W. Staley for a
loan thereon, which he told her could be had at an
expense of about $5; that she thereupon received $40
in cash from the "Staley Financial Company," who
took a mortgage to secure the sum of $68.50; that, at
the time of this transaction, a printed blank· form
authorizing the examination of the title and inventory
of the property mortgaged was signed by plaintiff and
her husband, and on the reverse side thereof a printed
direction to pay for such services, in blank as to pay
and amount, was also signed by the plaintiff ·and her
husband, and a blank application for the amount to be
loaned to plaintiff was signed by her and her husband;
that, prior to this suit, plaintiff had paid the Staley
Financial Company, or its successor by change of
name, the Continental Loan Company, $43.25 on
account of said loan; that, after such payments, being
compelled to go out to work, plaintiff stored her house-
hold effects in defendant's storage rooms; .and that
about two months thereafter she demanded a·return of
the same, offering to pay the storage and drayage and

also the $5 to be charged "for making out the papers" of the loan, when John W. Staley refused to deliver the goods, claiming that there were due and unpaid over $30 of the amount secured in the mortgage, whereupon plaintiff replevied the property. There was also evidence tending to show that the aforesaid blank forms signed by plaintiff had been thereafter filled out so as to constitute John W. Staley her agent for the purposes therein expressed, and directing the Staley Financial Company to pay him $27.50 for such services. There was testimony tending to show that John W. Staley was insolvent; that his wife was a stockholder in the defendant company, and his brother its secretary; that he assumed to act as manager of defendant's business, and stated to plaintiff that he was "head man" and partner in the company; and that the office of the company's secretary was separated by a partition from his own office in the same building. The evidence also tended to show that plaintiff never agreed to pay John W. Staley the $27.50 charged in the mortgage as a payment to him.

From the foregoing evidence, and other circumstances in the record, the jury might have inferred that the $27.50 put in the mortgage to cover a payment to John W. Staley was but another form for the reservation of usurious interest by the lender of the money, in other words, that John W. Staley was the managing agent of the defendant under the mask of disinterested negotiator of loans. The testimony is undisputed that, at his direction, the secretary (his brother) paid the money to plaintiff; that, while none of the company's shares of stock were in his name, his wife was a stockholder for an *uncertain* amount; that, although unsatisfied judgments stood against him, his guarantee was accepted by the company as a security against loss on loans. These circumstances afford a pregnant infer-

ence that he was the *alter ego* of the defendant, and fully warranted the jury in finding to that effect. Upon this assumption the mortgage in question was clearly void. Acts of 1891, page 170, sections 1 and 2; *Vette v. Johnson*, 43 Mo. App. 302. This conclusion as to the probative force of the testimony disposes of the chief point made by appellant, that there was no evidence to support the verdict.

Appellant next insists that plaintiff is bound by the terms of the order to pay Staley, because she signed it. This point would be well taken, if there was not not evidence tending to show that, according to the understanding of the parties, the blank order signed by plaintiff was intended to cover the expense of $5 agreed upon as the cost of securing the loan, and that Staley with whom this agreement was made was the representative of appellant. Under this view of the evidence plaintiff could not be prejudiced by an unauthorized interpolation of a larger amount in the blank order than had been agreed upon.

We have considered the other points made by appellant, and we do not think they entitle us to reverse a judgment which seems upon the record to be for the right party. Revised Statutes, 1889, section 2303. The judgment of the circuit court will, therefore, be affirmed. All concur, Judges ROMBAUER and BIGGS in the result.